UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRIAN JOSEPH SCHAAR,

    Plaintiff,

  v.                                      Case No. 22-CV-1463-SCD

MARTIN J. O'MALLEY,
    *Commissioner of the Social Security Administration*,

    Defendant.

## DECISION AND ORDER

Pursuant to a continuing eligibility review, Brian Joseph Schaar's social security disability benefits ended effective July 1, 2016. Schaar sought judicial review, and the district court remanded his case in December 2020. Schaar also reapplied for benefits in the interim. Considering both the cessation of benefits and reapplication, the Commissioner again concluded that Schaar no longer met the eligibility criteria. Schaar filed this appeal, arguing the ALJ failed to adequately account for his mental-health limitations in determining his work-related restrictions and identifying available jobs. For the reasons that follow, I will affirm the denial of disability benefits.

## BACKGROUND

### I. Procedural Background

The Social Security Administration found Schaar disabled due to bipolar disorder in October 2004. R. 368–69.[1] Pursuant to a routine review, the agency determined Schaar was

---

[1] The administrative transcript is filed on the docket at ECF No. 14-1 to 14-22.

no longer disabled as of July 2016 and terminated his benefits effective September 2016. R. 104–05. While judicial review was pending, Schaar reapplied for benefits—submitting both a Title II application for a period of disability insurance benefits and a Title XVI application for supplemental security income. R. 546, 744, 746. He alleged a disability onset date of July 2, 2016. R. 744, 746. After the district court remanded Schaar's cessation case, the Appeals Council consolidated the new applications with the remanded matter. R. 546.

On remand, the ALJ held a hearing on June 16, 2021, and issued another unfavorable decision on August 27, 2021. R. 362–97, 398–433. Because this case involves both new applications and denial of benefits after a continuing disability review, the usual five-step process does not apply. With respect to the continuing review, the adjudicator must determine whether medical improvement has occurred that would impact the ability to work. *See* 20 CFR 404.1594(f)(3)–(4). If so, the same key analyses apply, *i.e.*, determinations of what severe impairments the claimant has, whether any impairments meet a listing, what residual functional capacity (RFC) the claimant holds, and whether jobs are available in the national economy that can be performed by someone with the claimant's RFC. *Compare* 20 C.F.R. § 404.1520 (standard five-step process) *with* 20 C.F.R. § 404.1594(f) (continuing disability review steps).

Here, the ALJ determined that Schaar had not engaged in substantial gainful employment and still suffered from bipolar disorder, but also identified the following medically determinable impairments: post-traumatic stress disorder (PTSD), degenerative disc disease, history of right humeral fracture, and osteoporosis. R. 369. The ALJ observed that none of these impairments or combination of impairments met or medically equaled the severity of a presumptively disabling impairment. R. 369. In fact, the ALJ found that Schaar

experienced medical improvement related to the ability to work because Schaar's original impairment (bipolar disorder) no longer met or medically equaled the same listing as was met when benefits were awarded. R. 373; *see also* 20 CFR § 404.1594(c)(3)(i). The ALJ found Schaar to have the RFC to perform light work with the following limitations:

> no climbing ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; and frequent reaching, handling, and fingering with the right (dominant) upper extremity. The claimant is limited to simple, routine tasks in jobs with no inflexible or fast paced production requirements. The claimant can maintain focus, persistence, and pace for simple, routine tasks for two-hour periods throughout an 8-hour workday. The claimant is limited to jobs involving simple decision making and few, if any, workplace changes; limited to jobs that can be performed independently and that do not involve tandem tasks or collaboration with others; and involve occasional interaction with supervisors, coworkers, and the public.

Because Schaar had no past relevant work, the ALJ proceeded to analyze Schaar's age, education, work experience, and RFC. R. 385. The ALJ found that Schaar was and continues to be able to perform a significant number of jobs in the national economy. R. 385–87. Therefore, the ALJ concluded that Schaar's disability ended on July 1, 2016, and Schaar has not become disabled again since that date. R. 387.

The Appeals Council declined to assume jurisdiction over the case, making the latest ALJ decision the final decision of the Commissioner. R. 354–61. On December 6, 2022, Schaar filed this action seeking judicial review of the Commissioner's decision. *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 7, 8. Schaar filed a brief in support of his disability claim, ECF No. 21; the Acting Commissioner of the Social Security Administration filed a brief in support of the ALJ's decision, ECF No. 29; and Schaar filed a brief in reply, ECF No. 30.

## II. Personal and Medical Background

Schaar exclusively appeals the mental-health related aspects of the RFC determination. He challenges how the ALJ evaluated and adopted certain psychological opinions, as well as whether the RFC adequately addresses the limitations outlined therein. Schaar does not allege that the experts who developed those opinions failed to adequately encapsulate his limitations. For these reasons, a recitation of Schaar's personal and medical background is unnecessary and will be addressed throughout the opinion as relevant.

That being said, I will briefly introduce the four psychological opinions at issue. First, the ALJ gave "some weight" to the April 2017 opinions of the consultative psychological examiner: Steve Krawiec, Ph.D. R. 384. Dr. Krawiec opined, among other findings, that the claimant may have difficulty working around others if the occupation had a likelihood of negativity and that the claimant's response to such negativity would likely result in difficulty persisting at tasks and maintaining adequate pace. R. 264–68.

The remaining three opinions at issue come from the state agency psychological consultants: Soumya Palreddy, PhD, Robert Barthell, PsyD, and Therese Harris, PhD. *See* R. 382 (citing R. 303–05, 496–98, 526–28). The ALJ assigned "significant weight" to the common conclusion in these three opinions that Schaar "retains the capacity for unskilled work." R. 382. The ALJ observed that Drs. Palreddy, Barthell, and Harris all found a mild limitation in Schaar's ability to understand, remember, and apply information and a moderate limitation in his ability to concentrate, persist, or maintain pace. R. 382. But Dr. Palreddy found only a mild limitation in Schaar's ability to adapt and manage himself, while Drs. Barthell and Harris assigned a moderate limitation in this category. R. 382. And Dr. Barthell found only a mild limitation in Schaar's ability to interact with others, while Drs. Palreddy

and Harris assigned a moderate limitation in this category. R. 382. The ALJ concluded that the overall evidence was "most consistent with Dr. Harris' general assessment as to the degree of limitation in each domain." R. 382. Each of these consultants' opinions resulted in agency determinations that Schaar was not disabled. *See* R. 305, 499, 530.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (other citations omitted)). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also

is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if her decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISCUSSION

Schaar argues the ALJ relied on the opinions of three state agency psychological consultants and a consultative examiner but failed to encapsulate key limitations from those opinions into the RFC and hypothetical question. ECF No. 21 at 13. The Commissioner maintains that the ALJ properly accounted for the opinions at issue, and even if error occurred, it was harmless. ECF No. 29 at 1–2.

6

I.  **The ALJ Properly Evaluated the Opinions of the State Agency Psychological Consultants.**

Schaar lodges three arguments against the ALJ's evaluation of the opinions provided by the three state agency psychological consultants (Drs. Palreddy, Barthell, and Harris). He contends the ALJ inadequately addressed the scope of the consultants' review, the selection of one opinion over the others, and the regulatory criteria for assigning weight.

A.  *Limited Review.*

In assessing the consultants' opinions, the ALJ noted that Drs. Palreddy, Barthell, and Harris "were limited to the evidence available as of the date of review and did not have the opportunity to review the entire record." R. 382. Schaar claims the ALJ needed to identify what evidence the state agency psychologists did not review. ECF No. 21 at 15–16. As the Commissioner points out, the logical reading of the ALJ's observation is that the consultants were simply limited to the evidence available at the date of their respective reviews—and not any later submitted evidence. ECF No. 29 at 11. No further explanation is necessary. *See Fanta v. Saul*, 848 F. App'x 655, *659 (7th Cir. Mar. 15, 2021) ("When reviewing an ALJ's opinion, 'we give the opinion a commonsensical reading rather that nitpicking at it.'") (quoting *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010)).

B.  *Overall Evidence.*

Schaar also takes issue with the ALJ's conclusion that the "overall evidence" was most consistent with Dr. Harris' general assessment. R. 382. He argues the ALJ needed to explain why the evidence supported one medical opinion over the others. ECF No. 21 at 15–16. The goal of Schaar's argument is unclear, as it is unlikely he wished for the ALJ to find fewer degrees of limitation (as the other two consultants did). *See* R. 382. In any event, the ALJ's comparative explanation of the consultants' opinions supplies the appropriate connection.

7

Put simply, the ALJ found the evidence most consistent with a moderate (rather than mild) limitation in the two categories disputed among the consultants (the abilities to interact with others and to adapt and manage oneself). R. 382. And the ALJ already explained why the evidence supported a moderate finding in these categories in a different section of the decision. *See* R. 370–71 (analyzing the record evidence and concluding that Schaar's abilities to interact with others and to adapt or manage himself are moderately limited at most). This is not a case where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Steele*, 290 F.3d at 940. Therefore, the ALJ was not required to repeat himself. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (finding the ALJ's discussion of the claimant's impairments, objective medical evidence, and credibility elsewhere in the decision provided "the necessary detail to review the ALJ's step 3 determination in a meaningful way" and that "[t]o require the ALJ to repeat such a discussion throughout his decision would be redundant").

C. *Regulatory Criteria*.

Taking the comparison one step further, Schaar asserts that the ALJ made no attempt to reevaluate the opinions of Drs. Palreddy and Barthell under the regulatory criteria for assessing weight. *Id.* at 16 (citing 20 C.F.R. § 404.1527). Schaar is correct that the ALJ did not tick through all the factors listed for evaluating these opinions, but the ALJ is not required to address each factor. *See Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) ("In weighing a treating physician's opinion, an ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only 'minimally articulate' his reasoning; the ALJ need not explicitly discuss and weigh each factor.") (citing *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)). Here, some of the factors were obvious. For example, these doctors are state agency psychological

8

consultants, so they did not have a treating relationship with Schaar but do specialize in the mental-health field. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Moreover, the ALJ indirectly addressed the supportability and consistency of these opinions by weighing the findings in tandem with other subjective and objective evidence. *See infra* at 10 (addressing the weight the ALJ assigned to the consultants' opinions in comparison with other evidence); R. 382–83. Accordingly, Schaar has not established error in the ALJ's evaluation.

## II. The RFC is Consistent with the ALJ's Evaluation.

Schaar argues the ALJ did not adequately explain why the RFC deviated from the restrictions outlined in the mental residual functional capacity (MRFC) assessments. ECF No. 21 at 18. He cites a failure to incorporate worksheet checkboxes from Section 1, a generalized mismatch between his limitations and the RFC, and a failure to account for narrative findings. *Id.* at 18–21. The Commissioner maintains that the ALJ never intended to adopt the MRFC findings in full, and even if error occurred, it must be harmless because the consultants still found Schaar was not disabled based upon their versions of his restrictions. ECF No. 29 at 14–17.

### A. *Section 1 Findings.*

Schaar alleges the ALJ failed to address two checkboxes from Section 1 of the consultants' MRFC assessments: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. ECF No. 21 at 26. Dr. Palreddy found Schaar was not significantly limited in the first finding but was moderately limited in the second. R. 303–04. Drs. Barthell

9

and Harris checked the boxes for moderate limitations as to both limitations. R. 497–98, 527. To be clear, the ALJ found Schaar moderately limited in concentration, persistence, and pace (CPP)—and these two checkboxes are sub-listings to that broader category on the MRFC worksheet.

As an initial matter, the ALJ did not outright adopt any of the three consultants' opinions. R. 382–83. The ALJ made a careful distinction to afford only significant—rather than full—weight specifically to the consultants' common *conclusion* that Schaar "retains the capacity for unskilled work." R. 382. The ALJ's attention to balancing other subjective and objective factors rationalizes his decision to afford less weight to these opinions. R. 382–83. In the middle of two paragraphs analyzing the consultants' opinions, the ALJ announced that his finding of certain mild and moderate limitations:

> is consistent with the overall evidence of record and appropriately balances the claimant's subjective reports and intermittent abnormalities in mental status with his otherwise reasonable mental status examinations (e.g., appropriate interaction, intact memory and cognition, average estimated intelligence, fair/normal judgment), limited pursuit of or compliance with mental health treatment for much of the relevant period, reported improvement in symptoms with treatment compliance, and his reported activities, which have included during the relevant period living independently, tending to personal care and household chores, managing finances, using public transportation and/or medical taxis, accessing community resources and managing medical care, and using a computer for extended periods to conduct research and/or create music.

R. 382–83.

After summarizing several limitations outlined by Drs. Palreddy, Barthell, and Harris, the ALJ commented: "These more specific identified areas of limitation are largely accommodated in the residual functional capacity finding herein which limits the claimant . . . ." R. 383. This choice of language reveals that the ALJ did not intend to credit the specific limitations in full. "Asking the court to find that the ALJ wrongly credited

10

testimonial and treatment history evidence over the opinion of a non-treating doctor amounts to a request to reweigh the evidence." *Star v. Kijakazi*, No. 21-CV-755-SCD, 2022 WL 4129716, at *6 (E.D. Wis. Sept. 12, 2022). I cannot reweigh the evidence and find that a more restrictive RFC is required when the ALJ made such a determination based on substantial evidence.

Nevertheless, our circuit precedent makes clear that MRFC worksheet findings are not to be ignored when a medical opinion is credited. *See Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 778 (E.D. Wis. 2019). If the ALJ's opinion is read to credit the assessments at large, then Schaar would be correct that the ALJ erred by failing to acknowledge the fact that Drs. Barthell and Harris checked the boxes indicating a moderate limitation in Schaar's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *See* ECF Nos. 21 at 21, 30 at 11. However, "a CPP error may be harmless, particularly where the claimant fails to describe the additional limitations the ALJ should have included." *Thompson v. Saul*, 470 F. Supp. 3d 909, 929 (E.D. Wis. 2020); *see also Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

The first checkbox limitation at issue here—regarding scheduling, attendance, and punctuality—is quite vague. Schaar does not explain what this work restriction should entail for him or identify any evidentiary support for such a limitation. *See Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("Lockett cannot show a need for pace-specific restrictions in his residual functional capacity simply because of the "moderate" [CPP] designation; he must have evidence of that need, and he cites none."); *Salvador H. v. Kijakazi*, No. 22 C 7254, 2023 WL 5017944, at *7 (N.D. Ill. Aug. 7, 2023) ("the plaintiff has the burden of establishing

11

disability with medical evidence" and the plaintiff must identify portions of the record that support his allegations). Therefore, the ALJ's lack of attention to this finding amounts to harmless error at most.

As for the second Section I finding that Schaar identifies, Drs. Barthell and Harris each provided a narrative explanation for this checkbox. *See* R. 497, 527. Specifically, Dr. Barthell explained: "The [claimant] would not be able to carry out fast paced work for extended periods, but could maintain work that does not require sustained concentration for extended periods of time [without] the interference of trauma and bipolar [symptoms] distracting others or being distracted by co-workers." R. 497. Dr. Harris added: "With the above-indicated difficulties, the [claimant] remains able to maintain focus, pace, and persistence for simple tasks for 2-hour periods over an 8-[hour] workday within a normal 40-hour work schedule." R. 527. The ALJ incorporated those narratives by excluding inflexible or fast paced production requirements and limiting concentration to two-hour periods. *See* R. 374.

Schaar does not suggest that the ALJ failed to incorporate these particular narratives, nor does he explain why the adopted restrictions do not sufficiently accommodate the moderate limitation. *See Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (noting that worksheet observations are "medical evidence which cannot just be ignored," and that an ALJ may rely on narrative findings instead of checkbox findings where the "narrative adequately encapsulated and translates those worksheet observations."). While it is true that medical evidence cannot be ignored, it is also true that "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). A court must not disturb the ALJ's findings as long as the ALJ has built an "accurate and logical bridge between the evidence and the result."

12

*Beardsley*, 758 F.3d at 837. Here, the ALJ built a clear and logical bridge from the consultants' narratives—which translated the worksheet checkboxes—into the RFC.

B. *Generalized Mismatch.*

To the extent that Schaar believes the ALJ failed to incorporate other Section 1 findings, he has failed to clearly advance that argument. Schaar vaguely accuses the ALJ of lacking in specificity and "overlook[ing] the more detailed findings of Dr. Palreddy, Dr. Barthell, and Dr. Harris" without identifying the details to which he is referring. ECF No. 21 at 18, 20. After recounting the ALJ's summary of the Section 1 findings, Schaar suggests that the ALJ failed to explain why he assigned more generalized limitations than the findings described. *Id.* But a comparative reading reveals that the ALJ accounted for these findings in the RFC:

- The ALJ acknowledged Dr. Barthell's explanation "that the claimant is not able to carry out fast paced work for extended periods, but could maintain work that does not require sustained concentration for extended periods of time without the interference of trauma or bipolar related symptoms distracting others or his being distracted by coworkers." R. 383. The ALJ also observed Dr. Harris' finding that "the claimant remains able to maintain focus, pace, and persistence for simple tasks for 2-hour periods over an 8-hour workday within a normal 40-hour work schedule." R. 383. Comparatively, the RFC "limits the claimant to simple, routine tasks in jobs with no inflexible or fast paced production requirements and that require him to maintain focus, persistence, and pace for simple, routine tasks for only two-hour periods throughout an 8-hour workday." R. 383.

- The ALJ noted that with respect to social interaction, Dr. Harris "explained that the claimant remains able to interact with the public, manage appropriate superficial interpersonal interactions in the workplace, and accept reasonable supervisions." R. 383. Correspondingly, the RFC "limits the claimant to jobs that can be performed independently, that do not involve tandem tasks or collaboration with others, and that involve only occasional interaction with supervisors, coworkers, and the public." R. 383.

- The ALJ recognized that with respect to Schaar's ability to adapt and manage, "Dr. Harris indicated that the claimant would have difficulty with rapid, unexpected, or demanding work changes, but would be able to recognize normal hazards, adapt to minor changes, and manage routine, work-related stress/pressures." R. 383. The ALJ

13

also noted Dr. Barthell's conclusion "that the claimant would do best in a job that does not require changing tasks from day to day, but rather has a fairly regular set of duties and expectations." R. 383. In turn, the RFC "limits the claimant to jobs involving only simple decision making and few, if any, workplace changes."

The lack of conflict in these comparisons disproves Schaar's contention that the ALJ overestimated how much the state agency reports matched the RFC. ECF No. 21 at 19.

C. *Narrative Findings.*

Schaar claims the ALJ failed to apply certain narrative findings from Dr. Harris to the RFC. ECF No. 21 at 18. He highlights Dr. Harris' finding that that the claimant "could maintain work that does not require sustained concentration for extended periods of time [without] the interference of trauma and bipolar [symptoms] distracting others or being distracted by co-workers." *Id.* (citing R. 527). He makes a vague assertion about the exclusion of tandem tasking being "incongruent with limitations where 'bipolar [symptoms] distract[ed] others or [was] distracted by co-workers." *Id.* (citing R. 527). Schaar also points out that Dr. Harris found that "[t]he [claimant] would have difficulty adapting to the changes, demands, stressors and responsibilities of a work setting on a consistent basis. [Claimant] would do best in a job that does not require changing tasks from day to day but rather has a fairly regular set of duties and expectations." *Id.* (citing R. 527–28).

Ultimately, Schaar fails to articulate why the RFC is inadequate or how these narrative findings should have been better incorporated. The ALJ did account for the findings. Dr. Harris clarified the finding regarding sustained concentration to acknowledge that Schaar could maintain focus, pace, and persistence for two-hour periods. *See* R. 527. The ALJ explicitly included this limitation. *See* R. 374. The ALJ also addressed the potential for co-worker distraction by limiting Schaar to jobs that can be performed independently and that do not involve tandem tasks or collaboration. *See* R. 374.

14

Although the ALJ allowed for occasional interaction with supervisors, coworkers, and the public, this restriction is not inconsistent with a moderate limitation in social interaction. *See* R. 374. After all, moderate does not necessarily mean none, and the RFC is not meant to create the perfect work environment. *See Powell v. Kijakazi*, 664 F. Supp. 3d 846, 851 (C.D. Ill. 2023) (observing that the RFC "is the most an individual can work despite his or her limitations or restrictions"). Schaar does not explain how or why the ALJ should have otherwise accommodate his potential for co-worker distraction. And in fact, only Dr. Palreddy found that Schaar is "moderately limited" in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 304. Dr. Harris found no significant limitation in this category, and Dr. Barthell found Schaar did not have any social interaction limitations. R. 497, 527.

Finally, the ALJ accounted for Schaar's intolerance to workplace changes. Dr. Harris indicated that he would need "a fairly regular set of duties and expectations," and the ALJ limited Schaar to jobs involving "few, if any, workplace changes." R. 374. For these reasons, Schaar has not established error with regard to the consultants' narrative findings.

### III. The RFC Adequately Addresses the Claimant's Limitations.

Schaar argues the RFC fails to adequately accommodate his limitations in three broad categories: (1) workplace changes and stress; (2) speech, thought process, appearance, and judgment; and (3) concentration, persistence, and pace. ECF No. 21 at 14, 24–26. The Commissioner maintains that the ALJ here provided numerous, reasoned restrictions that appropriately address Schaar's limitations. ECF No. 29 at 17–19.

### A. Workplace Changes and Low Stress Work Environments.

Schaar argues the ALJ failed to account for Dr. Krawiec's findings regarding workplaces changes and stresses. ECF No. 21 at 24. Dr. Krawiec stated that "[w]orkplace changes and stresses would be inadvisable," as they "might exacerbate his mental health/emotional difficulties and even his subjective experience of pain." R. 267. Notably, the ALJ assigned this opinion only "some weight" and observed that the concerns were "somewhat vague." R. 384. Nevertheless, the ALJ stated his belief that the RFC accommodated limitations in Schaar's ability to handle workplace stressors, stating: "Dr. Krawiec's concerns are generally accommodated in the residual functional capacity finding herein, which provides significant limitations in workplace interactions, as well as limitations [on] workplace stressors, such as production requirements, decision making, and changes in routine." R. 384.

Schaar argues that by eliminating only "inflexible or fast paced production requirements," the ALJ left the door open for plenty of work which could be stressful in other ways. ECF No. 21 at 24. But the ALJ's explanation makes clear that the production-related restriction was not the only one intended to accommodate Schaar's intolerance for stress. *See* R. 384. Schaar contends that the ALJ failed to inform the VE that that he was attempting to prohibit any more than "low stress work environments." ECF No. 21 at 14. But again, the ALJ stated that the limitations on production requirements, decision making, *and* changes in routine were collectively intended to accommodate the need for a low-stress work environment. *See* R. 384. In fact, the ALJ's prior decision explicitly limited the claimant to low stress work environments, "defined as jobs with no inflexible or fast paced production requirements, involving only simple work related decision making and no more than

16

occasional changes in work setting." R. 96. Yet, Schaar claims the new RFC is "far less restrictive" than the prior hypothetical that explicitly excluded "low stress work environments." ECF No. 21 at 24. The alleged mismatch is simply not present. The ALJ also added restrictions on social interaction to further accommodate Schaar's limitations in CPP, as well as his abilities to interact with others and adapt or manage himself. *See* R. 374. In this way, the ALJ built a logical bridge from the stress-related concerns to specific workplace limitations.

    B. *Speech, Thought Process, Appearance, and Judgement.*

Schaar makes a single statement that the ALJ failed to account for his "pressured speech, tangential and ruminative thought process, disheveled appearance, and poor judgment." ECF No. 21 at 26. Schaar fails to explain how the ALJ should have accommodated such limitations or how the alleged limitations are supported by the record. Therefore, Schaar has not established error. *See Kujawski v. Colvin*, No. 11-C-3551, 2014 WL 2744118, at *7 (N.D. Ill. June 17, 2014) ("If there is evidence in those pages to prove [the plaintiff's claim], it is incumbent upon him to cite it specifically. Judges are not pigs, nosing about for truffles in briefs.") (internal citation omitted); *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("Karr bears the burden of proving that she is disabled[, and] she has failed to muster the evidence to prove her alleged disability and entitlement to disability benefits.").

    C. *Concentration, Persistence, and Pace.*

Schaar claims that the ALJ failed to indicate how the RFC's proscription on inflexible or fast paced production requirements accounts for limitations in his abilities to sustain concentration, persistence, or pace, as well as adapt and manage himself. ECF No. 21 at 24. But this restriction in the RFC directly corresponds to Dr. Barthell's explanation "that the

17

claimant is not able to carry out fast paced work for extended periods, but could maintain work that does not require sustained concentration for extended periods of time." R. 383. The ALJ built on this restriction by incorporating Dr. Harris' finding that Schaar could maintain focus, persistence, and pace for simple tasks for two-hour periods. R. 374, 527.

Schaar does not appear to be suggesting the ALJ should not have included the production requirement. However, he does not explain what further restriction(s) would have been adequate. *See Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023) (acknowledging the claimant has the burden of proof until "the burden shifts to the agency to show that 'there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations'"). Schaar claims that the ALJ assumed "that restricting [him] to 'inflexible or fast paced production requirements' would accommodate all the moderate limitations." ECF No. 21 at 26. But it is Schaar who appears to assume that "inflexible or fast paced production requirements" is the only mental-health related restriction.

Schaar cites cases where courts found moderate CPP limitations not adequately accommodated by limitations "to only simply routine, repetitive tasks, with few workplace changes, no team work, and no interactions with the public" or "to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions with few if any work place [sic] changes." ECF No. 21 at 16 (citing *Winsted v. Berryhill*, 915 F. 3d 466, 470 (7th Cir. 2019); *Varga*, 794 F.3d at 813–14). Although these limitations may prove inadequate under some circumstances, CPP is a broad category that must be crafted with individual attention to the claimant's limitations. *See Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020) (acknowledging "that a restriction to simple tasks is 'generally' not enough to account for moderate CPP limitations" because "an

18

individualized assessment of the claimant's specific symptoms" is needed). Schaar's RFC is not necessarily inadequate to address a moderate limitation simply because it is similar to the examples he cited. Schaar fails to explain why the RFC is inappropriate for his circumstances. He simply suggests the ALJ should have tailored the limitations beyond "simple, routine and repetitive tasks" and "inflexible or fast paced production requirements." ECF No. 21 at 27. But the ALJ did so by weighing the relevant evidence and building an RFC based on a thoughtful blend of restrictions. Accordingly, Schaar has not established reversible error.

## CONCLUSION

For all the foregoing reasons, I find that substantial evidence supports the ALJ's decision and that Schaar has not demonstrated that the ALJ committed reversible error in denying his disability claim. I therefore **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 20th day of March, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge